IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) |
| vs. | ) <br> )    3:22-CR-21 <br> ) |
| BRYCE HILL; CARLOS ZAMORA, | ) <br> ) |
| Defendants. | ) <br> ) |

MEMORANDUM ORDER

Before the Court are six motions *in limine*—two filed by the government, three by filed by Mr. Zamora, and one filed by Mr. Hill. ECF 1793; ECF 1799; ECF 1813; ECF 1817; ECF 1818; ECF 1825. The Court issues this omnibus order resolving the motions as follows.

I. **The government's motion *in limine* to admit evidence and testimony relating to a shooting allegedly conducted in furtherance of the conspiracy (ECF 1793).**

The government seeks to admit evidence of a non-fatal shooting and an intercepted phone call between Mr. Zamora and Mr. Monarrez, Jr. describing a failed purported assassination attempt. ECF 1793. The government argues that this evidence is relevant because it directly proves the conspiracy charge in Count 1, and is intrinsic evidence, thereby avoiding Federal Rule of Evidence 404's limitations as to character or propensity evidence. *Id.*, pp. 2-3. Mr. Zamora responds that the evidence is irrelevant and unnecessary to prove conspiracy, and would be unduly prejudicial under Federal Rule of Evidence 403, considering the lack of other evidence substantiating the events described by the phone call

To begin with, the Court agrees that this evidence is intrinsic, so Rule 404

wouldn't apply. Character evidence is inadmissible to prove an individual's propensity to act in accordance with past behavior. Fed. R. Evid. 404. However, Rule 404 does not prevent the admission of evidence that is "intrinsic" to proving the crime charged. *United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010). Evidence is intrinsic if it "directly proves the charged offense" or is "performed contemporaneously with" and "facilitate[s] the commission of the charged crime." *Id.* at 248-49. Thus, whether evidence is intrinsic depends on the elements of the crime at issue.

The government argues that Mr. Zamora's alleged participation in the shooting directly contributes to proving the conspiracy charge, and the Court agrees. ECF 1793, p. 3. Based on the government's proffer, Mr. Zamora allegedly shot the man in attempting to "exact revenge on an individual who had done something contrary to the goals of the conspiracy"—selling the drug traffickers fake methamphetamine. *Id.* This was done at the behest of a central figure in the drug-trafficking organization, and occurred within the timeframe of the conspiracy as pled in the indictment. All of this evidence goes to an act done in furtherance of the conspiracy, which is intrinsic to Count 1.

As to relevance and undue prejudice, the Court finds that this evidence is clearly relevant, as noted above. The relevance is further heighten based on Mr. Zamora's arguments over the existence of multiple conspiracies. That is, given Mr. Zamora's clear trial strategy of arguing the existence of multiple conspiracies, this evidence is particularly relevant, because it tends to show Mr. Zamora's central

involvement in the Monarrez drug-trafficking organization.

As to undue prejudice, there is some prejudice here to Mr. Zamora (and maybe to Mr. Hill), as this evidence paints Mr. Zamora as a dangerous individual, and the purported assassination is a bit confusing (*i.e.,* targeting the wrong person). But after careful consideration, this prejudice doesn't substantially outweigh the relevance of the evidence. Further, the Court finds that limiting instructions as to how the jury is to consider this evidence will minimize any prejudice and juror confusion. Thus, the evidence is relevant and doesn't run afoul of Rule 403.

For these reasons, the Court **GRANTS** the government's motion because the probative value of this purported assassination evidence is intrinsic, relevant, and not unduly prejudicial.

## II.   The government's omnibus motion *in limine* (ECF 1799).

The government moves for authorization to (1) recall witnesses to present chronological testimony; (2) use transcriptions at trial and in jury deliberations and admit English translation transcripts; (3) maintain Special Agents from the Federal Bureau of Investigation (FBI) and Homeland Security Investigations (HSI) at its counsel table during trial; (4) limit Mr. Zamora's use of FBI 302s/HSI ROIs; (5) introduce cooperators' plea agreements on direct examination; and (6) introduce evidence of firearms and ammunition seized during the investigation from members of the conspiracy. ECF 1799, p. 1. Mr. Zamora and Mr. Hill have no objections to the first five authorizations in the government's omnibus motion *in limine*, so the Court will grant those. ECF 1820, p. 2.

As to the motion's final request, the government seeks authorization to

introduce evidence of firearms and ammunition under the theory that firearms are "tools of the trade" of drug trafficking and highly probative of the scope and nature of the conspiracy. ECF 1799, p. 14. Mr. Zamora objects, arguing that such evidence of firearms or ammunition is irrelevant to the crime charged in Count 1 and highly prejudicial under Federal Rule of Evidence 403. ECF 1820, p. 3.

The Court finds that this evidence is relevant, and otherwise comports with Rule 403. Though, as identified by Mr. Zamora, ECF 1820, p. 3, the elements of this crime do not explicitly require the government to prove that conspirators possessed firearms or ammunition, "it has long been recognized that firearms are relevant evidence in the prosecution of drug-related offenses, because guns are known to be 'tools of the trade' of drug trafficking," *United States v. Mitchell*, No. 2:09CR105, 2013 WL 12202656, at *4 (W.D. Pa. Sept. 27, 2013) (Cercone, J.). Gun possession by coconspirators "may serve as circumstantial evidence from which a jury can infer drug activity," *United States v. Goodnight*, 67 F. App'x. 677, 681 (3d Cir. 2003), and is probative to determining the "scale of a conspiracy and the type of protection the conspirators felt they needed to protect their operation." *United States v. Adams*, 759 F. 2d 1099, 1109 (3d Cir. 1985).

Here, evidence of the tools of the drug trade seized from members of the conspiracy is probative to the scope and nature of the drug-trafficking conspiracy. This probative value outweighs any prejudicial effect to Mr. Zamora and his coconspirators, and as noted above, the Court can provide limiting instructions that would minimize any prejudice or risk of juror confusion. Based on Mr. Zamora's

stipulating to the first five authorizations (and Mr. Hill not objecting to them) and this determination as to the last requested authorization, the Court **GRANTS IN FULL** the government's omnibus motion.

### III. Mr. Zamora's motion *in limine* to exclude the Seventh and Eighth Supplemental Disclosures, *nunc pro tunc* (ECF 1813).

Mr. Zamora seeks to exclude from evidence the materials provided by the government as part of its Seventh and Eighth Supplemental Disclosures (ECF 1813-1), claiming that this was a discovery violation. ECF 1813. Mr. Zamora argues that the government "simply sat" on these materials by only providing them over six months after the Court's original discovery order (ECF 1354), disregarding Federal Rule of Criminal Procedure 16's discovery requirements and thereby prejudicing Mr. Zamora. ECF 1813, p. 3. The government defends that, rather than bad faith, its "expansive approach to its discovery obligations in this case" caused it to continue producing materials even after the Court's successive discovery deadlines of March 25, 2025 and August 4, 2025. ECF 1832, p. 6-7.

Rule 16 requires, "upon a defendant's request[, that] the government [] permit the defendant to inspect and to copy" items "within the government's possession, custody or control" where: (i) "the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). If a party fails to comply with a discovery order, Rule 16 provides that courts "may (A) order that party to permit the discovery or inspection…; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any order that is just

under the circumstances." Fed. R. Crim. P. 16(d)(2). Trial courts have discretion to impose sanctions for Rule 16 violations. *United States v. Jones*, 503 F. App'x 174, 178 (3d Cir. 2012). In determining discovery remedies, courts consider, "the reasons for the party's delay in producing the materials, including whether it acted intentionally or in bad faith, and the degree of prejudice to the opposing party." *United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009).

Based on the arguments of counsel here, the Court finds that the government did not act intentionally or in bad faith. While the Seventh and Eighth Supplemental Disclosures provided voluminous materials only a month or so before the current trial date of September 8, 2025, the former disclosure met this Court's deadline and the latter alone is insufficient to demonstrate intent. Additionally, the government's consistent efforts to produce materials as it identifies them cut against Mr. Zamora's implication that the government acted in bad faith. Finally, the Court isn't convinced that there is sufficient prejudice to warrant an exclusion sanction. Therefore, Mr. Zamora's motion is **DENIED**.

**IV.    Mr. Zamora's motions *in limine* to preclude the government from introducing communications in which Mr. Zamora is not a participant (ECF 1817) and for a *James* hearing on those communications (ECF 1818), *nunc pro tunc*.**

Mr. Zamora seeks to prevent the government from introducing wiretapped texts, calls, and transcripts where he is not a participant, including Exhibits 1-80, 145-279.1, 284-285, 291-330.1, 389-397.1, 399-425.1, 427-427.1, and 432-432.1. ECF 1817. Mr. Zamora also requests a *James* hearing to determine the admissibility of the exhibits identified in the former motion. ECF 1818.

### A. Mr. Zamora's motion *in limine* for a *James* hearing.

This Court first addresses the *James* hearing motion, as it affects whether the Court can rule on the hearsay objections in Mr. Zamora's motion to preclude the various wiretapped communications. The government does not object to a *James* hearing, though notes that such a hearing would require a continuance of the trial. ECF 1834, pp. 5-6. Mr. Hill joins in the request for a hearing. ECF 1847, p. 2.

After the initial briefs on this motion were filed, the Court held a status conference with counsel. At that conference, the Court instructed the government to file a proffer, and Defendants to file responses. The Court informed counsel that if, after receiving the proffers, it found that a *James* hearing was needed, it would then schedule one. After a review of the proffers, the Court finds that they are sufficient for the Court to examine the hearsay/coconspirator issues, and thus will deny the request for a *James* hearing.

Federal Rule of Evidence 104(a) controls as to the admissibility of coconspirator statements under Rule 801(d)(2)(E), *United States v. Ammar*, 714 F.2d 238, 247 n. 5 (3d Cir. 1983), requiring trial court "judge[s] alone" to decide preliminary questions of the admissibility of evidence, *United States v. James*, 590 F.2d 575, 579 (5th Cir. 1979); *see also United States v. Gaudin*, 515 U.S. 506, 525, (1995) (Rehnquist, C.J., concurring). A judge may make this determination based on evidence of the conspiracy briefed by the government or, if deemed necessary, through a pretrial evidentiary hearing—a *James* hearing. *James*, 590 F.2d at 585 (Tjoflat, J., concurring). Conducting such a hearing as requested by Mr. Zamora "is not a mandatory procedure" so long that there are "reasonable grounds" for a judge's ruling

on the coconspirator statements. *Ammar*, 714 F.2d at 246, 249.

Here, the Court finds that the government's proffer of evidence (ECF 1843, p. 8-20) and the responses thereto (ECF 1846; ECF 1847), provide sufficient grounds to rule on the admissibility of coconspirator statements without conducting a separate *James* hearing. *Id.* at 270 n. 5 ("At times, the court will be able to make its determination on the basis of proffers or even on the opening or what it knows of the available proof from the pretrial or suppression hearings."); *see, e.g., United States v. Grier*, No. 2:12-CR-161, 2012 WL 5614087, at *6 (W.D. Pa. Nov. 15, 2012) (McVerry, J.); *United States v. Parfaite*, No. 3:21-CR-56, 2022 WL 842599, at *13 (M.D. Pa. Mar. 21, 2022). Thus, the Court **DENIES** Mr. Zamora's motion for a *James* hearing and will decide the objections on the basis of the proffers and responses.

### B. Mr. Zamora's motion *in limine* to preclude the government from introducing communications in which Mr. Zamora is not a participant.

As to the motion to exclude the wiretaps, Mr. Zamora argues that these communications (1) are inadmissible hearsay under the Rule 801(d)(2)(e) coconspirator exception to hearsay; and (2) violate the Sixth Amendment's Confrontation Clause. ECF 1817; ECF 1846. The government responds that it can meet all four elements of the coconspirator hearsay exception by a preponderance of the evidence; and that the Confrontation Clause does not apply to the wiretapped statements because they are not testimonial. ECF 1833; ECF 1842.

#### 1. Mr. Zamora's objection to application of the coconspirator hearsay exception.

Mr. Zamora's hearsay argument is that the communications at issue "do not

implicate him in any way" or further an alleged conspiracy of which he was a member. ECF 1817, pp. 3-4. The government counters that this case concerns one single conspiracy of which Mr. Zamora was a member, and the statements were made in the course of and in furtherance of the conspiracy, so the statements are admissible as statements by a coconspirator. ECF 1833, pp. 3-6.

To rule on these statements, the Court must determine as a factual matter whether the prosecution has shown "by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013). In proving these elements, the government "may rely on the co-conspirator's statements themselves, if they are corroborated by independent evidence." *Id*; *United States v. Jannotti*, 729 F.2d 213, 218 (3d Cir. 1984) (requiring "evidence independent of the proffered hearsay itself" for such statements to be admissible under the coconspirator exception).

As to the first and second elements, the government contends that a conspiracy, as defined by the grand jury, existed, ECF 1833, pp. 4-5; ECF 1842, p. 3, 8, 20, and that the declarants of the statements at issue and Mr. Zamora were members of the same, single conspiracy, ECF 1833, pp. 4-5; ECF 1842, pp. 17-20. Mr. Zamora denies that the government's evidence is sufficient to prove that he was part of the alleged conspiracy because he was already distributing illegal drugs when he was approached by Mr. Monarrez to begin working together. ECF 1817, p. 4; ECF

1846.

Independent information presented in the government's proffer (ECF 1843, p. 8-20), particularly the anticipated testimony by a central leader in the conspiracy, shows that (i) multiple individuals agreed to distribute a controlled substance; (ii) Mr. Zamora was a party to that agreement; and (iii) Mr. Zamora joined the alleged conspiracy with a unity of purpose and intent to achieve an objective of selling illicit drugs for profit. *See* Third Circuit Model Criminal Jury Instruction 6.21.846B. Thus, the Court finds that the government has met its burden to show by a preponderance of the evidence that a single conspiracy existed, that Mr. Zamora (and Mr. Hill) were part of it, and that the statements in the proposed trial exhibits were statements made by coconspirators in the course of and in furtherance of the conspiracy (even if they did not mention or include Mr. Zamora or Mr. Hill).

More specifically, the Court finds that the government's proffer is sufficient to demonstrate at this preliminary stage that Mr. Zamora and the declarants at issue were members of the same alleged conspiracy (what the government calls the Monarrez Drug Trafficking Organization). The government has shown by a preponderance of independently corroborated evidence that (i) Mr. Zamora and declarants shared the common goal of selling illegal drugs for profit; (ii) the agreement between Mr. Zamora and declarants contemplated a continuous drug trafficking operation that would not continue without all alleged coconspirators' continued cooperation; and (iii) the roles of all individuals involved in the organization, including Mr. Zamora, significantly overlapped. *See United States v.*

*Kelly*, 892 F.2d 255, 259 (3d Cir. 1989) (determining "whether a series of events constitutes a single conspiracy or separate and unrelated conspiracies").

As for the third and fourth elements, the government argues that the statements at issue were made in the course of the conspiracy and in furtherance of the conspiracy. ECF 1833, p. 5. In response, Mr. Zamora contends that multiple of the statements were not in furtherance of the conspiracy because they were made to those not involved in the conspiracy or consist only of "idle chatter or casual conversations between co-conspirators." ECF 1817.

Not so. "A single conspiracy finding does not require every member to participate in every transaction." *United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992). Similarly, a factfinder may reasonably decide that a relationship with one member of a conspiracy is enough to make an individual a member of that conspiracy. *See United States v. Adams*, 759 F.2d 1099, 1114 (3d Cir. 1985) (a defendant's "relationship with… the cocaine supplier… [on its own] could have convinced the jury that [he] actively was involved in the conspiracy to distribute drugs").

Based on a review of the communications at issue, which occurred during the alleged conspiracy's time frame, the Court finds the communications to be in the course of and in furtherance of coordinating the alleged drug trafficking conspiracy's operations. *E.g.*, Exhibit 2 (determining best communication method); Exhibit 9.1 (coordinating amount); Exhibit 13.1 (coordinating timing); Exhibit 172.1 (confirming counting of money); Exhibit 184.1 (discussing who can be trusted); Exhibit 233.1 (coordinating location and amount); Exhibit 284.1 (confirming amounts); Exhibit

291.1 (determining amounts). Thus, the Court finds the government to have met its burden by a preponderance of the evidence for the third and fourth *Turner* elements.

Meeting all four elements, the communications at issue fall under the coconspirator hearsay exception and are admissible. The Court there will conditionally admit these exhibits. To be clear, the Court makes this finding based on the proffers and based on a lower preponderance-of-the-evidence standard. Thus, this is without prejudice to Defendants raising their multiple-conspiracy arguments at trial and moving for an acquittal under Rule 29 or later moving to strike or limit some of these exhibits as the evidence comes in and at the conclusion of the government's case-in-chief.

### 2. Mr. Zamora's Confrontation Clause objection.

Regarding the constitutional objection, Mr. Zamora argues that any communications "that do not include [Mr. Zamora] or any testifying witness are inadmissible" under the Confrontation Clause. ECF 1817, p. 5. However, it is well-established that wiretaps authorized under 18 U.S.C. § 2510 *et seq.* are not testimonial. *United States v. Hendricks*, 395 F.3d 173, 181 (3d Cir. 2005) ("Title III recordings are not testimonial"). The Court finds therefore that the Sixth Amendment does not apply to these communications.

Based on the foregoing conclusions, the Court **DENIES** Mr. Zamora's motion to preclude the government from introducing communications in which Mr. Zamora is not a participant.

**V. Mr. Hill's motion *in limine* to admit various plea agreements (ECF 1825).**

Mr. Hill seeks to admit five different plea agreements from the Western District of Washington. ECF 1825, p. 1. Mr. Hill argues that the plea agreements are relevant pursuant to Rule 401, are admissible under Rule 403, and are not inadmissible hearsay under Rules 801 and 802. *See id.* Mr. Hill only seeks to admit the portions under "Statement of Facts" and "The Charge," suggesting that the rest may be redacted. ECF 1825, p. 2.

Mr. Hill argues that the plea agreements are relevant and probative for their tendency to prove that although he was apart of a similar conspiracy, he was not a conspirator in any drug-distribution operation in the Western District of Pennsylvania. *See id.* at 8. As for hearsay, Mr. Hill contends that the plea agreements are non-hearsay both because the plea agreements are not offered for their truth and because these are statements of his party opponent, *i.e.*, the United States, under Rule 801(d)(2). *Id.* at 10. The government opposes such admission. ECF 1849. After careful review, the Court finds that the "Statement of Facts" sections in the plea agreements are admissible, as they: (1) are relevant; (2) do not upset Rule 403; and (3) are non-hearsay statements pursuant to Rule 801(d)(2).

Beginning with relevance, the Court agrees with Mr. Hill that the evidence has a tendency to make the likelihood of Mr. Hill only participating in a separate, distinct conspiracy more likely. As for Rule 403, the government raises the concerns that this evidence poses "the danger of confusing the issues and misleading the jury." ECF 1849, p. 7. Under Rule 403, the Court "may exclude relevant evidence if its probative

value is substantially outweighed by a danger of. . . confusing the issues, [or] misleading the jury." The government fears that such evidence about a different conspiracy may "mislead the jury as to its ultimate decision and sow confusion of the issues." ECF 1849, p. 7.

After weighing the government's concerns against the probative value, the Court finds that Rule 403 favors admission here, and any prejudice or risk of juror confusion isn't so undue as to substantially outweigh the relevance. It is clear that Mr. Hill's main defense theory here is that there are multiple conspiracies, and although the plea agreements themselves might not tell the full story of the "other conspiracy" or win the day for Mr. Hill, the government's concerns are mainly weight issues, which can be addressed through the evidence and effective witness examination and closing argument.

With respect to hearsay, hearsay is generally any out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Mr. Hill argues that the plea agreements are not hearsay definitionally because he contends that they will not be used for any truth asserted. That doesn't seem quite right; the Court finds that given Mr. Hill's proffered use of the plea agreements, such evidence likely would be used for its truth: *i.e.*, the existence and facts and conduct concerning the Washington drug conspiracy. That is, Mr. Hill wishes to convince the jury that he participated in a separate conspiracy, and the plea agreements assert as much.

But under Rule 801(d)(2), statements made or adopted by an opposing party

are not hearsay, and the Court finds that this exemption applies. The government concedes that statements of government attorneys "qualify as statements 'made by the party in an individual or representative capacity.'" ECF 1849, p. 4 (quoting Rule 801(d)(2)(A)). But the government makes two arguments as to why the plea agreements do not constitute admissions by it—neither of which completely wins the day.

First, it argues that the plea agreements are peppered with representations by the defendants. That is certainly true for the section in the plea agreement concerning "the Charge," which seems to be a representation by the defendant in the plea agreement, and so is not a statement by the government. Therefore, the government is correct about that section, and that section must be redacted from the agreements. But as to the "Statement of Facts," the section begins with the "the *parties* agree on the following facts." *Id.* (emphasis added). The Court thus finds that the "Statement of Facts" sections in the plea agreements represent the statements of the government, and being Mr. Hill's party opponent, are therefore not hearsay.

Second, the government argues that for Rule 801(d)(2) to apply, the given statement "must be contrary to the party's position at the time of trial." ECF 1849, p. 11. The Court has reviewed the Third Circuit case law that the government relies on and finds that the footnote discussion in those cases purporting to create such a requirement are *dicta* and, respectfully, wrong and unworkable, and so the Court will not add this extra-textual requirement onto the rule. *See United States v. Ciavarella*, 716 F.3d 705, 725 n.9 (3d Cir. 2013); *United States v. Ferri*, 778 F.2d 985, 990 n.3 (3d

Cir. 1985).[1]

Finally, the government has requested that should the plea agreements be entered into evidence, that the indictments relating to the respective plea agreements also be admitted. ECF 1849, p. 10. The Court finds that outcome appropriate under the Rule of Completeness. Thus, Mr. Hill's motion with respect to these plea agreements is **GRANTED**, **IN PART**; the "Statement of Facts" sections of the plea agreements may be admitted, provided that the corresponding indictments be admitted, as well.

## VI. Mr. Hill's motion *in limine* to admit a separate criminal complaint (ECF 1825).

Mr. Hill also seeks to admit a criminal complaint filed in the Western District of Washington. ECF 1825, p. 3. Mr. Hill makes similar arguments as to the relevance, Rule 403 balancing, and hearsay concerns as under his motion to admit the five plea agreements. *See generally id.* But unlike the plea agreements, the Court finds the criminal complaint to be inadmissible hearsay.

Mr. Hill again argues that the criminal complaint at issue is not hearsay because he would not offer such evidence for the truth of the matter asserted. For the same reason that the plea agreements were being used for their truth, so here, too. However, unlike the plea agreements, the criminal complaint here contains multiple layers of hearsay within the initial out-of-court document. For example, the

---

[1] As is clear from *Ferri*, the Third Circuit cited a 1970 Fifth Circuit case on this issue, which didn't even apply the rules of evidence (since the case was decided before enactment of the rules). The Third Circuit in *Ciavarella* mentioned *Ferri* in a footnote, without lending it any support, and while citing a Seventh Circuit case that reached the opposite conclusion.

criminal complaint references statements by law enforcement, conversations between suspected co-conspirators, and information from different social media platforms. *See generally id.* The pervasiveness of the inner hearsay renders this document inadmissible. Therefore, Mr. Hill's motion with respect to the criminal complaint filed in the Western District of Washington is **DENIED**.

**********************

DATE: September 2, 2025                    BY THE COURT:

                                           /s/ *J. Nicholas Ranjan*
                                           United States District Judge