**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) |
| | )  3:22-CR-21 |
| BRYCE HILL; and CARLOS ZAMORA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Before the Court are Mr. Hill and Mr. Zamora's joint motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (ECF 1928), Mr. Hill's supplement to the Rule 29 motion (ECF 1952), the government's response (ECF 1984), Mr. Zamora's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 (ECF 1986), and the government's response to Mr. Zamora's motion for a new trial (ECF 2130).

After carefully considering the parties' briefs, arguments, relevant law, and relevant trial evidence, the Court **DENIES** Mr. Hill and Mr. Zamora's joint Rule 29 motion (ECF 1928), Mr. Hill's supplement (ECF 1952), and Mr. Zamora's Rule 33 motion (ECF 1986) for the reasons below.

## I.    Mr. Hill's and Mr. Zamora's Rule 29 motion.

In their joint motion, Mr. Hill and Mr. Zamora make three arguments: (1) that the government failed to establish venue in the Western District of Pennsylvania; (2) that the government's evidence established a buyer-seller relationship, rather than a conspiracy; and (3) that there was a variance between the conspiracy charge in the Second Superseding Indictment and the government's evidence at trial.  ECF 1928. Mr. Hill filed a supplement (ECF 1952) to the Rule 29 motion in which he makes two additional, albeit related arguments: (1) that he joined the conspiracy after August 9,

2025, which would therefore make venue improper; and (2) that the plea agreements of several individuals show that Mr. Hill was part of a separate conspiracy.

### a. Rule 29 legal standard.

Under Rule 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A "Rule 29 judgment of acquittal is a substantive judicial determination that the prosecution has failed to carry its burden." *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005) (cleaned up). A defendant "challenging the sufficiency of the evidence pursuant to Rule 29 bears a heavy burden." *United States v. John-Baptiste*, 747 F.3d 186, 201 (3d Cir. 2014) (cleaned up). The Court must view the evidence in the light most favorable to the government and afford deference to a jury's findings, and draw "all reasonable inferences in favor of the jury verdict." *United States v. Riley*, 621 F.3d 312, 329 (3d Cir. 2010) (cleaned up).

"A trial judge can grant a motion for judgment of acquittal only when the evidence as a whole is insufficient to support a conviction as a matter of law. However, where there is evidence upon which a jury may reasonably base and find guilt beyond a reasonable doubt, the trial judge cannot intrude on the function of the jury as the trier of fact. The evidence need not be of such overwhelming magnitude that the jury must inevitably find guilt beyond a reasonable doubt; there need only be sufficient, legal evidence which when viewed in a light most favorable to the government, a jury can reasonably and in good faith make a finding of guilt beyond a reasonable doubt." *United States v. Cerilli*, 418 F. Supp. 557, 565 (W.D. Pa. 1976) (Rosenberg, J.) (cleaned up).

In this particular case, Defendants moved for judgment of acquittal after the government closed its case in chief, so the Court considers the motion based solely on the record up to that point. Fed. R. Crim. P. 29(b) ("If the court reserves decision, it

must decide the motion on the basis of the evidence at the time the ruling was reserved.")  After Mr. Hill introduced some evidence at trial and after the trial had concluded, Mr. Hill filed his supplemental Rule 29 motion; as to that supplemental Rule 29 motion, the Court considers the entire trial record.  Fed. R. Crim. P. 29(c); *see United States v. Foster*, 783 F.2d 1082, 1085 (D.C. Cir. 1986) (en banc) (Scalia, J.)(holding that appellate review of a renewed motion for judgment of acquittal takes into account "all evidence produced" at the time of the renewed motion).

### b. The government presented sufficient evidence to establish venue in the Western District of Pennsylvania.

Defendants challenge that venue was proper in the District; but because acts in furtherance of the conspiracy occurred here, the Court finds that the government met its burden as to venue.

Article III of the Constitution provides that the "[t]rial of all [c]rimes . . . shall be held in the [s]tate where the said [c]rimes shall have been committed."  U.S. Const., art. III, § 2, cl. 3.   Federal Rule of Criminal Procedure 18 also provides that the government must "prosecute an offense in a district where the offense was committed."  Congress codified the underpinnings of venue with regard to conspiracy in 18 U.S.C. § 3237, which provides that a conspiracy charge can be "prosecuted in any district in which such offense was begun, continued, or completed."

More specifically, for a conspiracy charge, "venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy."  *United States v. Perez*, 280 F.3d 318, 329 (3d Cir. 2002).  A co-conspirator need not to have foreseen that any acts committed in furtherance of the conspiracy would occur in a particular venue.  *United States v. Renteria*, 903 F.3d 326, 330 (3d Cir. 2018).  The government must prove venue by a preponderance of the evidence.  *United States v. Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014).

Here, the government had to establish that just *one* member of the Monarrez drug trafficking organization committed an act in furtherance of the conspiracy in Western Pennsylvania. The government met its burden. For example, at trial, the government introduced into evidence and played for the jury several wiretapped phone calls (*e.g.*, Government Exhibits 1, 3, 7, 9, 14, 30, 38, 39, 44, 47, 48, and 49) in which two co-defendants who pled guilty—Erivan Guerrero and James Pinkston discuss meeting and organizing drug sales. ECF 1935. Significantly, Mr. Pinkston was physically located in the Western District during these calls, and these calls concerned his intent to purchase drugs for further re-distribution in the Western District. The government also presented evidence that fentanyl pills tied to the Monarrez DTO and connected to Mr. Pinkston were seized by the U.S. Postal Service in Western Pennsylvania. Government Exhibits 500–05, 507–12, 516, and 2238–40; *id.*

The Court therefore finds that the government established venue in the Western District of Pennsylvania by a preponderance of the evidence.

### c. The government presented sufficient evidence to demonstrate that Mr. Hill and Mr. Zamora were members of the Monarrez DTO conspiracy.

Defendants next move for judgment of the acquittal, arguing that the trial evidence did not establish that they were part of the conspiracy at issue. Considering the trial evidence, the Court finds that there was sufficient evidence to prove the conspiracy.

At trial, the Court instructed the jury on the charge of conspiracy. ECF 1921. Those instructions made clear that to prove a conspiracy charged pursuant to 21 U.S.C. § 846, the government was required to prove three elements beyond a reasonable doubt: (1) two or more persons knowingly and intentionally arrived at an understanding or agreement, either spoken or unspoken, to work together to achieve

the overall objective of the conspiracy, to distribute and/or possess with intent to distribute a controlled substance; (2) the defendant knowingly and intentionally joined that agreement or conspiracy during its existence; and (3) that the defendant joined the conspiracy knowing of its objective and intending to further or achieve that objective. *Id.*, pp. 6–10.

Mr. Hill and Mr. Zamora argue that there was insufficient evidence that they were part of a single conspiracy. ECF 1928, p. 6. Instead, they assert that that they were each part of separate buyer-seller agreements, with no knowledge of the objective of the larger conspiracy. A simple buyer-seller agreement can essentially be a defense to a conspiracy charge, and the Court instructed the jury on that defense at trial. ECF 1921.

In distinguishing between knowledge of the objective of the larger conspiracy, on one hand, and a discrete buyer-seller relationship, on the other, there are a number of helpful factors to consider, including: "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; [] whether there is a demonstrated level of mutual trust; . . . whether the buyer's transactions involved large amounts of drugs; . . . [and] [w]hether the buyer purchased his drugs on credit." *United States v. Gibbs*, 190 F.3d 188, 199–200 (3d Cir. 1999) (cleaned up). These factors tend to go to the idea of trust or a "stake" in the conspiracy—that is, "when a defendant drug buyer has repeated, familiar dealings with members of a conspiracy, that buyer probably comprehends fully the nature of the group with whom he is dealing, is more likely to depend heavily on the conspiracy as the sole source of his drugs, and is more likely to perform drug-related acts for conspiracy members in an effort to maintain his connection to them." *Id.* at 199.

Here, examining these factors and the trial evidence, there was overwhelming evidence as to both Mr. Zamora and Mr. Hill that they were part of the larger

conspiracy and had knowledge of its purpose.  In other words, they were more than buyer/sellers.

As to Mr. Zamora, the trial evidence shows that he interacted with multiple members of the conspiracy, including directly with the two main leaders (Mr. Monarrez and his father); he bought distribution quantities of drugs from the leaders multiple times and sometimes on credit;[1] and he attempted to carry out a "hit" at the direction of Mr. Monarezz for a bad drug deal involving another co-Defendant, Mr. Hill.  A few examples include (ECF 1935):

- Government Exhibit 81: Audio call during which Mr. Zamora orders 10k pills or 10 lbs of meth;
- Government Exhibit 82: Audio call during which Mr. Zamora orders a half-kg of cocaine;
- Government Exhibit 88: Audio call during which Mr. Zamora asks Mr. Monarrez-Mendoza for 82 lbs of meth;
- Government Exhibit 89: Audio call during which Mr. Zamora tells Mr. Monarrez-Mendoza that customers will arrive in 30-40 minutes;
- Government Exhibit 103: Audio call during which Mr. Zamora orders 100 lbs of meth and 10k pills; references last big meth deal; discusses price per pound of meth;
- Government Exhibit 120: Audio call during which Mr. Zamora tells Mr. Monarrez-Mendoza he is with his friend and they are counting money; Mr. Zamora tells Mr. Monarrez-Mendoza "90";
- Government Exhibit 336: Audio call during which Mr. Zamora tells "Nene" (*i.e.*, Mr. Monarrez) that J-Lo wanted him to come to Fashion Square; Nene said J-Lo was picking up right now and would deliver the 50k when he was done; and
- Government Exhibit 434: Audio call in which Nene and Mr. Zamora discuss a drive-by shooting in which Mr. Zamora was a participant.

As to Mr. Hill, there is similar evidence: multiple interactions with multiple members of the organization, including with Mr. Monarrez; buying staggering

---

[1] During trial, Marcos Monarrez, Jr. testified that he "fronted" pills to Mr. Zamora, meaning that Mr. Monarrez provided Mr. Zamora with pills—and Mr. Zamora did not pay for those pills upfront—and then Mr. Zamora would pay Mr. Monarrez once he sold the pills to customers.  ECF 2161, pp. 165–66.

amounts of distribution quantities of drugs on credit;[2] directing his subordinates to do pick-ups and count money with other members of the Monarrez DTO; discussing how the drugs would be transported; and having conspirators come to his home in Arizona.   A few examples include (ECF 1935):

- Government Exhibit 168: Audio call during which Mr. E. Lopez tells Mr. Hill he is going to an appointment; Mr. Hill says by the time he's done with the appointment, Mr. Hill will be done counting money;
- Government Exhibit 169: Audio call during which Mr. Hill tells Mr. Lopez that he will have the money for bricks later but has the money for the pills now; Mr. Hill gives Mr. Lopez his address in Tempe;
- Government Exhibit 293: Audio call during which Mr. Hill tells Nene that he is going to send Alicia Parks down to Arizona;
- Government Exhibit 294: Audio call during which Nene arranges to pick up Ms. Parks;
- Government Exhibit 297: Audio call during which Mr. Hill and Nene discuss how to relocate Ms. Parks when there are police nearby;
- Government Exhibit 321: Audio call during which Nene asks if Mr. Hill's flyer was on the flight; Mr. Hill asked if he gave excess money;
- Government Exhibit 432: Audio call during which Ms. Sahal asks for pills to recoup a loss; Nene says he has to give 200 to Mr. Hill (a/k/a Benji); and
- Government Exhibits 1791–94: Lab reports related to Mr. Hill's apartment search.

Considering this evidence together, a reasonable juror could have found that Mr. Zamora and Mr. Hill were members of the Monarrez DTO and had knowledge of the larger conspiracy and its main objective—to distribute controlled substances. They were more than mere buyers.

### d. There was no variance between the Second Superseding Indictment and the evidence presented at trial.

Defendants next make an argument that is somewhat related to their two prior ones—essentially, arguing that there was a variance.  They argue that the indictment

---

[2] During trial, Marcos Monarrez, Jr. testified that he "fronted" a "couple hundred thousand" Fentanyl pills to Mr. Hill.  ECF 2163, pp. 186, 197.

charges a single conspiracy, but the trial evidence varied and showed multiple conspiracies.

As the Third Circuit has stated: "Where an indictment charges a single conspiracy but the evidence at trial proves only multiple, separate conspiracies, a variance occurs. When faced with a variance argument, we must first decide whether there was sufficient evidence from which the jury could have concluded that the government proved the single conspiracy alleged in the indictment. But unlike a 'pure' sufficiency-of-the-evidence challenge, a successful variance challenge requires us to vacate a conviction only where the discrepancy between the indictment and the proof at trial prejudiced the defendant's substantial rights." *United States v. Allinson*, 27 F.4th 913, 922 (3d Cir. 2022) (cleaned up).

Relatedly, the Third Circuit has instructed: "To assess whether a single conspiracy, rather than multiple conspiracies, existed, we look for sufficient evidence of: (1) a common goal among the conspirators; (2) a common scheme wherein the activities of one group were necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture; and (3) overlap in the dealings of the conspiracy's participants." *Id.* (cleaned up).

For essentially the same reasons that their buyer-seller argument fails, this variance argument fails also. The government presented sufficient evidence of a single conspiracy—for example, through the overlapping discussions and interactions of many of the key conspirators, and common methods of distribution and payment (*e.g.*, ghost bag flights; fronting of drugs).

At trial, Mr. Zamora tried to argue to the jury that the evidence showed multiple hub-and-spoke conspiracies (ECF 2161, pp. 57, 75–76); but the government presented sufficient evidence that it wasn't. The government presented strong evidence that—like many other drug conspiracies—this was more of a "chain" or web-like conspiracy, with different suppliers, re-distributors, street dealers, and couriers

- 8 -

and assistants, all of whom were working as part of and in furtherance of the common objective: to make money through the Monarrez DTO's distribution of controlled substances. *Id.* at pp. 111–12, 161, 163; ECF 2162, pp. 12, 40–01, 137–39; ECF 2165, pp. 20–28.

Based on the evidence presented at trial, the jury could have easily concluded the existence of a single conspiracy; there was no variance.

### e. Mr. Hill's supplement to the joint Rule 29 motion.

As noted above, Mr. Hill filed a supplement to his joint Rule 29 motion, which raises two arguments and which captures the evidence that he presented in his case at trial. Specifically, he argues that: (1) he joined the conspiracy after August 9, 2022 (*i.e.*, after Defendant James Pinkston left the conspiracy and, without Mr. Pinkston's actions in the Western District, there is no venue here); and (2) the plea agreements of several individuals show that Mr. Hill was part of a separate conspiracy in the Washington area. ECF 1952.

As to the first argument, the timing of Mr. Pinkston's involvement in the conspiracy is irrelevant. "The gist of a criminal conspiracy, the agreement between co-conspirators, may continue over an extended period of time and involve numerous transactions. Parties may join the conspiracy after its inception, and may withdraw and terminate their relationship with the conspiracy prior to its completion. The fact that conspirators individually or in groups perform different tasks in pursuing the common goal does not, by itself, necessitate a finding of several distinct conspiracies. And even if a small group of co-conspirators are at the heart of an unlawful agreement, others who knowingly participate with the core members and others to achieve a common goal may be members of a single conspiracy." *United States v. Boyd*, 595 F.2d 120, 123 (3d Cir. 1978) (cleaned up). So it doesn't matter whether Mr. Hill and Mr. Pinkston were involved in the conspiracy at the same time; venue is proper in the Western District of Pennsylvania because Mr. Pinkston was part of the

conspiracy and committed acts in furtherance of the conspiracy during its existence in Western Pennsylvania.

As to the second argument, Mr. Hill also argues that the plea agreements of individuals in a separate case in Washington demonstrate that he was involved in a separate conspiracy with those individuals. This point, however, does not negate Mr. Hill's involvement in the Monarrez DTO. An individual can be a member of multiple criminal conspiracies. *See United States v. Smith*, 82 F.3d 1261 (3d Cir. 1996) (where defendant was tried for multiple conspiracies in separate jurisdictions and the Third Circuit held that a single conspiracy did not exist so as to preclude subsequent prosecution).

For these reasons, the Court denies Mr. Hill and Mr. Zamora's Rule 29 motion.

## II.    Mr. Zamora's Rule 33 motion for a new trial.

Mr. Zamora also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33 (ECF 1986), raising the same arguments in his Rule 33 motion as he did in his Rule 29 motion. He asked the Court to consider the arguments under the standard of Rule 33, and order a new trial.

### A.    Rule 33 legal standard.

Under Rule 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires" upon a defendant's motion. The district court has discretion over whether to grant a new trial and should exercise great caution in setting aside a verdict reached in a trial where the action has been tried before a jury. *United States v. Kelly*, 539 F.3d 172, 181–82 (3d Cir. 2008) (cleaned up). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (cleaned up).

Rule 33 motions "are not favored and should be granted sparingly and only in exceptional cases." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (cleaned up).

Unlike the Rule 29 motion, the Court does not view the evidence in the light most favorable to the government; instead, the Court exercises its own judgment in evaluating the evidence presented by the government. *Johnson*, 302 F.3d at 150.

**B. The jury's verdict was not against the weight of the evidence.**

Mr. Zamora presents the same two arguments that he does in his Rule 29 motion: (1) venue is improper in Western Pennsylvania; and (2) the government's evidence presented at trial established the existence of multiple conspiracies. ECF 1986.

The Court finds Mr. Zamora's arguments unpersuasive. As noted above, the government presented extensive evidence to establish that venue is proper in Western Pennsylvania. The government also presented extensive evidence to show that Mr. Zamora was a member of the Monarrez DTO and that this was a single conspiracy.

In invoking the Rule 33 standard, Mr. Zamora mainly asks the Court to serve as a "13th Juror" and discount the credibility of some of the cooperating witnesses. Even as the 13th Juror, the Court can say that there is no question that there were aspects of some of the cooperating witnesses' testimony that appeared to the Court to be, at best, unpersuasive, and at worst, not entirely credible. But even discounting the testimony of the cooperators, the Court is left with numerous wiretapped calls and other direct evidence, showing Mr. Zamora's participation in the conspiracy, knowledge of the objectives, shared trust with the organization, and co-conspirators' clear conduct in furtherance of the conspiracy in this District.

In other words, even without the cooperator testimony, the Court cannot find that the jury's verdict was against the weight of the evidence.

The Court therefore denies Mr. Zamora's Rule 33 motion.

***********

For the foregoing reasons, the Court hereby **DENIES** Mr. Hill and Mr. Zamora's joint Rule 29 motion (ECF 1928), **DENIES** Mr. Hill's Supplement to the Rule 29 motion (ECF 1952), and **DENIES** Mr. Zamora's Rule 33 motion (ECF 1986).

DATE:  December 17, 2025                    BY THE COURT:

                                           /s/ *J. Nicholas Ranjan*
                                           United States District Judge